UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DANIEL CARPENTER,

        Plaintiff,

v.

A. KNAPP et al.,

        Defendants.
_____/

Case No. 1:23-cv-722

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a prior order, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

      Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Brown under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth and Fourteenth Amendment claims against Defendant Knapp, as well as his official capacity claims. Plaintiff's First Amendment retaliation claim against Defendant Knapp in Knapp's individual capacity remains in the case.

## Discussion

### I.   Factual Allegations

Plaintiff Daniel Carpenter is currently incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

The events of which Plaintiff complains occurred there. Plaintiff sues MDOC Central Office Security Threat Group (STG) Coordinator Brent T. Brown and ICF Lieutenant A. Knapp in their official and personal capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on or about December 18, 2021, he filed a grievance against Defendant Knapp, alleging that Defendant Knapp had been harassing him. (*Id.*, PageID.3.) Two days later, Defendant Knapp approached Plaintiff on the yard, and told Plaintiff that he would make his life a "living hell" if Plaintiff did not sign off on the grievance. (*Id.*) Plaintiff complained to Deputy Warden Steward (not a party) but was told that he "ha[s] not seen harassment yet." (*Id.*) Plaintiff claims that after he filed the grievance, Defendant Knapp falsified documents to place Plaintiff on STG I status. (*Id.*) Plaintiff alleges that he was never interviewed prior to being designated as STG 1. (*Id.*) Plaintiff contends that Defendant Brown assisted Defendant Knapp in falsifying the documents. (*Id.*, PageID.3–4.)

Plaintiff contends that his placement on STG status constitutes "an atypical and significant hardship" because his conditions "are very different [than those in] the ordinary general population." (*Id.*, PageID.4.) Plaintiff alleges that he cannot hold a job, use the JPay system, go to the yard, use the law library, and order Secure Packs. (*Id.*) Plaintiff can only make one phone call a week and cannot have callouts. (*Id.*) Plaintiff must be handcuffed every time he leaves his cell. (*Id.*)

Plaintiff asserts that Defendants violated his First Amendment rights by retaliating against him, and that they violated his Eighth Amendment rights by placing him on STG status. (*Id.*, PageID.3.) The Court also construes Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon his placement on STG status. Plaintiff seeks $200,000.00 in punitive damages. (*Id.*, PageID.5.)

4

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

5

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity Claims

As noted above, Plaintiff asserts that he is seeking damages as relief. To the extent that Plaintiff names Defendants in their official capacities, the Court notes that a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Therefore, the Court will dismiss Plaintiff's suit for monetary relief against Defendants in their official capacities.

### B.     Retaliation

Plaintiff claims that Defendants Knapp and Brown retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that he filed a grievance against Defendant Knapp for harassment, and two days later, Defendant Knapp told Plaintiff that he would make his life a "living hell" if Plaintiff

6

did not sign off on the grievance. (ECF No. 1, PageID.3.) Plaintiff claims that after he filed the grievance, Defendant Knapp falsified documents to place Plaintiff on STG status. (*Id.*)

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). In *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the court held that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. Finally, the Court notes that Defendant Knapp's statement that he would make Plaintiff's life a living hell, combined with his conduct in having Plaintiff placed on STG status, would suggest that Defendant Knapp's action was motivated by a desire to retaliate against Plaintiff. Therefore, Plaintiff's retaliation claim against Defendant Knapp is not subject to dismissal on initial review.

With regard to Defendant Brown, Plaintiff makes a conclusory assertion that Defendant Brown assisted Defendant Knapp in falsifying the documents. (ECF No. 1, PageID.3–4.) Plaintiff, however, merely alleges the ultimate fact of retaliation with respect to Defendant Brown. Plaintiff's complaint contains no facts from which the Court could infer that Defendant Brown was aware of Plaintiff's grievance against Defendant Knapp and assisted in the alleged falsification of documents to place Plaintiff on STG status because of that grievance. Plaintiff's First Amendment individual capacity retaliation claim against Defendant Brown, therefore, will be dismissed.

    **C.**    **Eighth Amendment**

Plaintiff claims that his designation as an STG I and placement in administrative segregation violated his Eighth Amendment rights because he cannot get a job, use JPay, go to yard, attend the law library, or order "securePAK." Plaintiff also states that he is only allowed one phone call a week and must be handcuffed each time he leaves his cell. (ECF No. 1, PageID.4.)

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff is denied certain privileges as a result of his STG designation and placement in administrative segregation, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### D. Due Process

Plaintiff claims that his designation as STG I and his placement in administrative segregation without a hearing violated his Fourteenth Amendment right to due process. The

Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Boone v. Nemesito*, No. 1:20-cv-389, 2020 WL 3046011, at *4–10 (W.D. Mich. June 8, 2020), the court thoroughly analyzed the issue and concluded that placement on STG II status, which is more restrictive than STG I status,[2] did not violate the Fourteenth Amendment.

> As noted above, STG status carries with it a number of restrictive conditions of confinement. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *see Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).
>
> The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *see Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). Prisoners cannot "have a protected liberty interest in the procedure[s] affecting [their] classification and security, because the resulting restraint, without

---

[2] *See* Policy Directive 04.04.113 ¶¶ BB-CC.

more, [does] not impose and 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Cash v. Reno*, No. 97-5220 1997 WL 809982, at *1 (6th Cir. Dec. 23, 1997); *see also Morris v. Metrish*, No. 97-1624, 1998 WL 246454, at *2 (6th Cir. May 5, 1998); *Moore v. Sally*, No. 97-4384, 1999 WL 96725, at *1 (6th Cir. Feb. 3, 1999). Without such a protectible interest, Plaintiff cannot successfully claim he has been denied due process, because "process is not an end in itself." *Olim*, 461 U.S. at 250.

The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. For example, in *Guile v. Ball*, 521 F. App'x 542 (6th Cir. 2013), the Sixth Circuit rejected Plaintiff Guile's claim that his designation as a homosexual predator and consequent transfer to a Level V facility with more restrictive conditions resulted in an atypical, significant deprivation. 521 F. App'x at 544; *see also O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (designation as homosexual predator and assignment to Level IV facility with additional restrictions did not implicate a protected liberty interest).

Plaintiff's STG designation is, in effect, just another type of security classification. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Nonetheless, because the restrictions are more severe than those that follow from being designated at the highest security level—level V— additional scrutiny of their significance and typicality is appropriate.

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court took a closer look at the restrictive conditions of confinement that followed classification to the highest security— "Supermax"—prison in Ohio:

> Conditions at OSP[, the "Supermax" facility,] are more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units. The latter are themselves a highly restrictive form of solitary confinement. see Austin I, supra, at 724-725, and n.5 (citing Ohio Admin. Code § 5120-9-13 (2001) (rescinded 2004)). In OSP almost every aspect of an inmate's life is controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.
>
> Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and

10

> in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact. Aside from the severity of the conditions, placement at OSP is for an indefinite period of time, limited only by an inmate's sentence. For an inmate serving a life sentence, there is no indication how long he may be incarcerated at OSP once assigned there. *Austin I*, supra, at 740. Inmates otherwise eligible for parole lose their eligibility while incarcerated at OSP. 189 F. Supp. 2d, at 728.

*Wilkinson*, 545 U.S. at 210-11. The Court considered, as *Sandin* directs, whether these conditions were significant and atypical compared to the ordinary incidents of prison life. The Court acknowledged the difficulty in "identifying the baseline from which to measure what is atypical and significant...." *Id*. at 223. Nonetheless, the Court concluded that at least some of the restrictions imposed in Ohio's "Supermax" were atypical and significant "under any plausible baseline." *Id*. The Court declared that the specific restrictions that rendered confinement in "Supermax" atypical and significant were:

> almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. *Austin I*, 189 F. Supp. 2d, at 728. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin*, *supra*, at 483.

*Id*. at 223-24.

Two months after the Supreme Court issued the *Wilkinson* opinion, the Sixth Circuit considered whether the restrictions that followed the STG designations (I and II) were significant and atypical under *Sandin*. *Harbin-Bey*, 420 F.3d at 576-77. The court held that they were not atypical and significant and that, therefore, the plaintiff did not have a liberty interest protected by the Fourteenth Amendment Due Process Clause and Plaintiff's complaint was properly dismissed upon initial review. *Id*.

> Four years later, in *Heard v. Caruso*, 351 F. App'x 1 (6th Cir. 2009) (unpublished), the Sixth Circuit again considered the restrictions that followed the STG II designation. In *Heard*, however, the plaintiff had supplemented his complaint to include allegations that parroted some of the language the *Wilkinson* Court used to describe Ohio's "Supermax" restrictions. The court of appeals concluded those allegations warranted factual inquiry along the lines of that conducted by the Supreme Court in *Wilkinson*.
>
> On remand, this Court granted summary judgment in the *Heard* defendants' favor on Heard's due process claim. *Heard v. Caruso*, No. 2:05-cv-231 (W.D. Mich. Aug. 30, 2011) (ECF No. 410). The Court found that the restrictions attendant to the STG II designation did not rise to the level of the "Supermax" restrictions that the *Wilkinson* Court found warranted due process protections. Specifically, this Court found that the STG II restrictions did not extremely isolate the prisoners or disqualify them from parole. This Court concluded, therefore, that due process protection for the STG II designation was not required. (2:05-cv-231, ECF No. 410 PageID.2470.)
>
> Two of the key factors that prompted the *Wilkinson* Court to conclude that due process protected the "Supermax" classification—parole disqualification and extreme isolation—are not present here. Without those factors, the conditions of confinement for prisoners designated STG II are not significant and atypical departures from the normal incidents of prison life. Plaintiff has failed to identify a protected liberty interest with respect to his security level or STG classification and, consequently, he has failed to state a claim for violation of his due process rights by virtue of their actions with respect to Plaintiff's security level or STG designation.

*Boone v. Nemesito*, 2020 WL 3046011, at *5–9 (footnotes omitted).

For the reasons set forth in *Boone v. Nemesito*, Plaintiff's designation as STG I and confinement in administrative segregation in this case fails to state a claim for the violation of his due process rights.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Defendant Brown will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth and Fourteenth Amendment claims against Defendant Knapp, as well as his official capacity

12

claims. Plaintiff's First Amendment retaliation claim against Defendant Knapp in Knapp's individual capacity remains in the case.

    An order consistent with this opinion will be entered.


Dated:   August 14, 2024                    /s/ Sally J. Berens
                                                                SALLY J. BERENS
                                                                United States Magistrate Judge